Haywood, J.
One of the complaints made by the caveatees is, that such issues as have been made and tried upon the point of notoriety, were not constructed with so much certainty as to show by the answers which the jury have given to them, a basis upon which can be legally placed the judgment which has been given by the Circuit Court for the caveator. These issues are found in the numbers specified in the brief of the caveator’s counsel.
The general doctrine is, that the Court which tries a caveat should make up such issues, as by the answers to them will. give precise information of all the facts necessary to the support of the judgment which it gives and as will make clear, unequivocal and indubitable, every material fact that the judgment is founded upon, and without the existence of which that judgment ought not to be rendered. If, for instance, knowledge of the place by five or six persons when the entry of the caveatee is made, or before that of the caveator is made, be sufficient legal notoriety, the Court, when it gives judgment against the caveatee, should be most clearly informed that no such special notoriety existed, as well as that there was not any general notoriety. And, if upon the verdict, the Court is not satisfied that the jury have negatived the existence of both species of notoriety, it should suspend judgment till that satisfaction be obtained; otherwise, the consequence may he, that where the jury have only negatived general notoriety, the Court, presuming that they have negatived special notoriety also, may give judgment against the caveatee, when, in fact, special notorie ty did exist, and, if put in issue specially, would have been affirmed by the jury. Evidently, then, the Court ought not to proceed till informed by a special verdict upon a general issue, or by an answer to a special issue, *88 that there is no such special notoriety. If they presume it upon a general answer to a general issue, the presumption may be fallacious. • The Court should not presume that of which precise and positive information may be obtained by verdict upon a special issue. Does not reason suggest that it is better to wait for certain information, than by precipitancy to presume a material fact which may not be true, and which, when presumed, must be subversive of justice. If called upon on our oaths to declare that in this general verdict the jury have decided upon the question of special notoriety, could we say with safety in the affirmative that they have so decided. If not, we should not act upon the assumption that they have. The same uncertainty that would induce a withholding of the declaration should likewise induce us to withhold judgment till the material fact should be more decisively ascertained.
It may be said, that upon an issue of general notoriety evidence may be given of a special one, and the case of Polk and Trimble is cited in support of the position. That was a case of ejectment, not of caveat, but it is there decided, and rightly too, that if the place be known by the name given to it in the entry by six or eight men in a mess, which was part of a company of sixty-five men' or more, that such special notoriety was sufficient to make good the entry. It was decided in the Federal Court in the case of Person’s heirs and Campbell, that if the place described were known to three or four survivors of a company of six or seven locators, that such special notoriety was sufficient. When locations were made in West Tennessee in 1781, 1782,1783, and 1784, they were generally made by small parties of locators who went out for the purpose, and in most instances some of them were killed by the Indians before the locations were entered. What would become of West Tennessee, if general, and not special notoriety, would only support an entry ? I do not know of the decisions which clearly establish that special notoriety may be given in evidence upon an issue of general notoriety, but take the law to be so; and it may happen, that either from misapprehension the evidence may not be given, or if given, the jury may not have been informed of its sufficiency to warrant them in finding a verdict in favor of general notoriety. If it be said that this is an impossible supposition, it may be replied, that probably such was the fact in this very case. The first issue asks of the jury to say whether the camp was notorious, to which they answer in the negative. The sixth issue demands of them if-the camp were notorious at the date of the entry ? To which they answer, that the troops camped there, and that it was not notorious. Now, if the troops camped there and still it was not notorious, the jury must have understood by this term a general notoriety through the whole country; the Court, too, upon their answer to the sixth issue, must have understood that the encampment of troops there would not make the notoriety spoken of in *89 the issue, otherwise, seeing that the jury had found evidence from which they might have inferred the fact, he would have ordered a new trial, to the end they might find the fact and not the evidence of it, like the case where in trover and conversion the jury found a demand and refusal and not the conversion, the Court would grant a new trial that they might find the conversion. . If, then, special notoriety might have been given in evidence, and actually -was given in evidence by proof of the encampment of troops there, it is very presumable that the Court and jury believed upon these issues that special notoriety could not justify an affirmative answer to these issues. The same evidence which sustained their answer to the sixth issue, well warranted the finding at least of special notoriety, and they have not done so; no doubt mistaking the meaning of the term, if, indeed, there be no difference upon-such issues between general notoriety and the knowledge which is confined to a few. The verdict upon the sixth issue is equivalent to the finding of special notoriety, and it is questionable whether the Court, in rendering judgment, had not a right so to have considered it. At all events, it is apparent that both the Court and jury, in acting upon these issues, have thought only of general notoriety, and that it was the only object of inquiry; otherwise, they never would, after the evidence given to them on the sixth issue, have found that the camp was not notorious. There is the greatest reason to believe that the camp was known at the date of the entry to a part of those who encamped there and made the camp, and was proven to the jury to be so, and that, under a wrong notion _of the technical import of the word notoriety, they have found a wrong verdict, which will be in all likelihood corrected by an issue upon special notoriety. And as upon such issue a mistake cannot be committed, and the Court will not he called on to presume anything, it seems to me that it should be made up and submitted to the jury, and that this cause cannot be correctly decided without it.
The word notoriety is but of recent introduction into the juridical history of this State, and that introduction has been greatly opposed by some of the most eminent lawyers of the country. Its precise import is not exactly defined, and, therefore, when stated by way of question to a jury, it should, for the prevention of mistakes, be accompanied with such restrictive and modifying terms as may serve to neutralize the pernicious effects of too much generality. Our laws speak only of special entries, giving preference to them over others. The word notoriety is not used in any law, nor even in any of our reports, till a few years back. Before that time the inquiry was, are the objects on the ground which are called for in the entry ? Can the place be known by the objects called for when seen by a subsequent locator ? Can it be found from its calls, by reasonable inquiry of those who have been there, before the entry was made ? But in this record the inquiry is, was it notoriously known ? Was it notorious at the *90 date of the entry ? And least any idea should creep in, favorable to special notoriety, the term generally understood is employed in issue seven, “ were the objects, or any of them, generally understood before the date of the caveator's entry, &c. ?” Why not say, had they become known to many of those resident in that part of the country ? For, if the. subsequent locator could get information from them, the entry of the caveatees was a good one. Generally understood, is a term of indefinite extent, capable of receiving different expositions, and of excluding all evidence less comprehensive than itself, and capable, also, by its generality, of shedding a malign influence upon the sense of the equally extensive phrase, notoriously known. Generally known, as used in the second issue, instead of known to a number of those, or the greater part of those, or a considerable part of those, who had been there or in that section of the country, before the date of entry, is better adapted to eventual uncertainty than to legal precision, and ultimately yields to the province of presumption a greater privilege than it can rightfully use. The alternation of the terms, notoriously known, and generally known, if not an ingenious invention to make them be understood as synonymes, at least has a strong tendency that way, and certainly is stationed at such intervals as will make it very promotive of that end. All this may be unpurposed accident, but still it is a very ingenious accident, and, being in addition a very mischievous one, should be as much deprecated, and its effects be as studiously eluded, as if it were the creature of design. The effect seems to have been produced which the promiscuous use of these terms rendered so extremely probable. If it be only probable that by such accidental circumstance, either alone or combined, with others, the jury have mistaken the import of the term notorious, judgment should be suspended till we become satisfied that they acted free from any misconception. Notoriety, if we must use the term, is either a matter of law or matter of law and fact. When it is asked what notoriety is, the definition which the law gives is resorted to for an explanation, and Cook’s Beports, 138, is produced. It is evident if an issue be made upon a matter of law, that it is a void issue, for this plain reason, that a jury being not judges of law cannot answer to a question of law. It is equally evident that it cannot be made upon a matter complicated both of law and fact, because the law part of the issue is not within their province to determine. Coke’s Beports, 25, and Com. Digest Pleader, ch. 34. Upon the general issue in ejectment, all matters material and relevant to the cause are necessarily given in evidence, and submitted to the jury on the general issue under the direction of the Court. Not so in other causes which admit of special pleading, for in all of them matters of fact only are submitted to the judgment of the jury. Accordingly, the cases cited at the bar were, all of them, cases in ejectment. But there is no case cited in which, in a caveat, an issue was ever made upon notoriety. Nor is there *91 any precedent to show, as assumed at the bar, that upon such issue special notoriety may be given in evidence, and will be competent to support a verdict of general notoriety. An entry is special and such as our law requires if the calls be such as as will make the place entered to be known as the land entered, when the objects called for are seen, and if, furthermore, by its directions, those who have been at the spot, antecedently to the date of the entry, be enabled by the description to go to the place, especially if the entry on its face point out who those persons are, so that inquiry may be made of them. This definition excludes the necessity for universal or general knowledge of the objects called for throughout the world, or State, or district, or county, or captain’s company, or neighborhood of the place, for if no such knowledge exist, the entry may be yet good if the objects called for in it be known to a party or mess of men who have been there antecedently to the entry, when the whole country was a wilderness, or to the greater part of them, or to the survivors of them, whether this be a small locating, or hunting, or trapping party, which went into the wilderness before it was settled, and many years before any settlements began to be formed around the place entered, or near to it. In this way were all the first locations made, and none of them could stand if general notoriety were necessary to make them good. If the facts which constitute a special entry be submitted to a jury without any intermixture of law, and be found by verdict, the Court will know with all possible certainty how to apply the law, without leaving it to be determined by a jury. And without using the term notoriety, the Court can say that the entry is a good one. To those who have predilections for the word notoriety, it will be known when the facts are stated that notoriety is one of the constituents of the entry. Those who have no partiality for it will be able to say without using it, that the entry is special and satisfies the requisites of the law.
My opinion is that an issue ought to be made either upon the facts proposed to be submitted by the 9th and 10th issues, offered by the caveatee’s counsel and rejected by the Circuit Court, or some other issue, which will make only the simple inquiry, was the place called for known to a mess or party which encamped there on the return of Shelby’s troops from the Chickamauga expedition?
As to the question of Owen’s admissibility, had he been introduced in the trial of Overton’s caveat, or of any other who agreed to abide by the event of this present suit, I think he would have been inadmissible, for then the party entitled to his testimony would have disqualified him by making him interested as a purchaser coming in after the suit commenced, and, of course, liable to the decree to be made in the cause. But as to the caveator in this suit, if he was not a partaker in the acts which interested the witness, he stands exactly as he did before the witness purchased of Over-ton, that is to say, entitled to a disclosure of that which the witness knew *92 before the institution of his caveat. Whether he was a partaker or not must be determined by the record before us. The parties agreed, says the record, that the event of this suit should govern all the others, which were to be suspended in Roane County Court; whether or not Rogers was meant to be included in the word parties cannot be certainly decided one way or the other. He seems not to be any way interested in the agreement, for it was nothing to him how the suspended suits should be finally settled. In the absence, therefore,, of any affirmative circumstance to include him, he must remain as he stood before the agreement, and then the witness was admissible.
With respect to Judge Scott’s testimony I take the rule to be that a witness may refresh his memory by reading his notes, if after reading them he can recollect the facts they detail, but if after reading them he cannot recollect the facts, then he ought to produce the notes themselves; that was done in the present case, and it was sworn by Judge Scott that the notes were correctly taken. 1 am of opinion that the evidence was proper. 3 Term, 749.